# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FILED**
ORLANDO, FL

JAN 15 1999

U.S. MAGISTRATE JUDGE

UNITED STATES OF AMERICA

v.

JAY ELLINGTON
JASON PURCELL

**CRIMINAL COMPLAINT**

CASE NUMBER: 99-1012-01, 02

(Name and address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about December 3, 1998 in Orange and Lake County, in the Middle District of Florida, defendants did

(Track Statutory Language of Offense)

Conspiracy to possess with intent to distribute 3,4 methylenedioxymethamphetamine

in violation of Title 21, United States Code, Section 846. I further state that I am a(n) Task Force Agent Gerry Montalvo, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:  X  Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

January 14, 1999                        at    Orlando, Florida
Date                                          City and State

JAMES G. GLAZEBROOK
United States Magistrate Judge                _____
Name & Title of Judicial Officer               Signature of Judicial Officer

**STATE OF FLORIDA**  Case No. 99- 1012-01, 02

**COUNTY OF ORANGE**

### AFFIDAVIT

1. I am employed as a Task Force Agent with the Drug Enforcement Administration (DEA), Orlando District Office and have been conducting active drug investigations for the past four years. Prior to entry on duty with the Task Force, I served as a deputy with the Lake County Sheriff's Office for (3) three years. Prior to that time, I served as a police officer with the Leesburg Police Department. In addition to my basic law enforcement training, my training includes specialized training from the following institutions: the DEA, the United States Custom Service, the Florida Department of Law Enforcement, Daytona Beach Community College, Lake County Vo-Tech and others. I have been involved in drug investigations in excess of 100 drug trafficking offenses and offenders. I am currently involved in numerous active investigations being conducted by the DEA Orlando Resident Office.

2. Beginning in November 1998, your affiant initiated an investigation targeting Jay **ELLINGTON** and his illegal drug trafficking activities in the area of Orlando, Florida.

3. In November 1998, your affiant received information from an individual here by referred to as Confidential Source one (CS#1) regarding Jay **ELLINGTON** and his drug trafficking activities. CS#1 stated that he/she has been involved with **ELLINGTON** in several illegal drug transactions involving hundreds of pills of "Ecstasy" 3,4 methylenedioxymethamphetamine (MDMA) in the area of Orlando, Florida. CS#1 indicated that **ELLINGTON** was currently residing in the Orlando area and was selling and distributing MDMA in Orlando, Florida. CS#1 further stated that **ELLINGTON** indicated

that he had a local supplier who could provide him with thousands of pills of MDMA for re-sale.

4.      On December 2, 1998, CS#1 made contact with Jay **ELLINGTON** at his residence located at 3540 Edgewater Drive, Orlando, Florida. During the meeting, CS#1 told **ELLINGTON** that he/she had a buyer in the Ocala, Florida area who was interested in purchasing large amounts of MDMA. Subsequently, **ELLINGTON** agreed to sell thirty (30) pills of MDMA to your affiant and Lake County Sheriff Detective Charles Thompson, who would be acting in an undercover capacity. **ELLINGTON** negotiated a price of $450.00 in U.S. Currency for the thirty(30) pills of MDMA. It was understood that the thirty(30) pills of MDMA would be a representative sample of at least one thousand (1,000) pills of MDMA to be purchased at a later time.

5.      At approximately 10:00 P.M., your affiant was contacted by CS#1, via telephone, and indicated that he/she had met Jay **ELLINGTON** at his residence. CS#1 indicated that **ELLINGTON** was in possession of the thirty(30) pills of MDMA. Subsequently, **ELLINGTON** and CS#1 traveled to Mount Dora, Florida in order to meet with Detective Thompson and conduct the transaction.

6.      At approximately 11:10 P.M., **ELLINGTON** met with Detective Thompson in Mount Dora, Florida where **ELLINGTON** provided Detective Thompson with the thirty (30) pills of MDMA. In exchange, Detective Thompson gave **ELLINGTON** $450.00 in U. S. Currency as previously agreed. During the transaction, **ELLINGTON** told Detective Thompson that if your affiant did not like the MDMA pills, then he could possibly supply

another type of MDMA pills. **ELLINGTON** was then told that your affiant was interested in purchasing six thousand (6,000) pills of MDMA from **ELLINGTON**'s supplier.

7. **ELLINGTON** then utilized Detective Thompson's cellular phone and place a telephone call to his supplier who was identified as Jason **PURCELL**. During the conversation, **ELLINGTON** told **PURCELL** that the transaction went fine and that your affiant wanted to purchase six thousand (6,000) pills of MDMA. Following the conversation, **ELLINGTON** told Detective Thompson that **PURCELL** was willing to sell your affiant the six thousand (6,000) pills of MDMA, however, **PURCELL** wanted to sell three thousand (3,000) pills first and if that transaction went well, then **PURCELL** would sell the remaining three thousand (3,000) pills of MDMA.

8. On December 3, 1998, at approximately 4:00 P.M., CS#1 contacted Jay **ELLINGTON** via telephone. During the conversation, **ELLINGTON** said that his supplier, Jason **PURCELL**, agreed to sell your affiant six thousand (6,000) pills of MDMA for a total of $69,000 in U. S. Currency. CS#1 told **ELLINGTON** that your affiant was trying to put the money together and would contact him/her later.

9. At approximately 6:30 P.M., CS#1 met with Jay **ELLINGTON** and Jason **PURCELL** at **ELLINGTON**'s residence in Orlando, Florida. During the meeting, **PURCELL** told CS#1 that he was the manager of Florida No Fault Insurance in Casselberry, Florida, and wanted your affiant to bring the money to that location to conduct the transaction. CS#1 told **PURCELL** and **ELLINGTON** that your affiant would not bring the money anywhere until your affiant could see the MDMA pills. Subsequently, **PURCELL** asked to see the money first before he would show the MDMA pills. It was later

agreed that **ELLINGTON** would travel to Mount Dora, Florida and meet with Detective Thompson who would show **ELLINGTON** the money.

10.  At approximately 9:00 P.M., **ELLINGTON** drove from his residence in Orlando, Florida to Mount Dora, Florida and met with Detective Thompson. During the meeting, Detective Thompson and other assisting undercover agents were able to show **ELLINGTON** the money to be used for the transaction of the six thousand (6,000) pills of MDMA. **ELLINGTON** then utilized Detective Thompson's cellular phone and contacted **PURCELL**. During their conversation, **ELLINGTON** told **PURCELL** that he had seen the money. Subsequently, **PURCELL** agreed to drive from Casselberry to Mount Dora, Florida and meet with Detective Thompson and finalize the transaction.

11.  At approximately 10:40 P.M., **PURCELL** drove to Mount Dora, Florida and met with Detective Thompson. During the meeting, **PURCELL** showed Detective Thompson a shoe box containing a large amount of MDMA pills. Detective Thompson then gave assisting agents the take down signal. As assisting agents moved in to effect the arrest, **PURCELL** fled in his vehicle, crashing into two unmarked police cars before being apprehended a short distance away. **ELLINGTON** also fled on foot and was apprehended a short distance away.

12.  Your affiant searched **PURCELL**'s vehicle which revealed a shoe box containing approximately three thousand (3,000) pills of MDMA.

13. Your affiant read **PURCELL** his Miranda Rights.  Subsequently, **PURCELL** began to cooperate and said that he only brought three thousand (3,000) pills of MDMA because his supplier, who he identified as Adam Richards, wanted to sell three thousand (3,000) pills at a time.

FURTHER, your affiant sayeth not.

Gerry Montalvo, Task Force Agent
U.S. Drug Enforcement Administration

Subscribed to and sworn before
me this 15 day of January, 1999.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE